A04A0067. HERITAGE CREEK DEVELOPMENT
CORPORATION v. COLONIAL BANK et al.
(601 SE2d 842)

JOHNSON, Presiding Judge.

Heritage Creek Development Corporation obtained a loan from Colonial Bank to fund the construction of a 24-lot residential subdivision. The loan was secured by a security deed covering the subject real property. Heritage Creek defaulted on the loan. In January 2000, Colonial Bank notified Heritage Creek that it was accelerating and declaring due and payable the entire balance of the loan, as permitted by the loan instruments. In the letter, the bank also notified Heritage Creek that it planned to initiate foreclosure proceedings if the debt was not paid in full.

As a result of subsequent negotiations, Colonial Bank permitted Heritage Creek to cure the default by paying all the arrearage to bring the account current. The parties then executed an agreement modifying some of the terms of their loan and security agreements.

Later, Heritage Creek again defaulted on the loan. Acting in accordance with the loan and security agreements as amended, Colonial Bank accelerated the loan, and notified Heritage Creek by letter in April 2000. Heritage Creek did not cure the default, so, in May, Colonial Bank advertised the property for foreclosure sale.

---

[8] See id.

On the Friday before the foreclosure sale was to occur, a representative of Heritage Creek contacted Colonial Bank and made an offer to bring the loan current by paying the past due amount and late fees. At that time, however, because the full balance of the loan was due under the terms of the loan agreement, the bank refused Heritage Creek's request to reinstate the loan upon payment of only the arrearage, and the foreclosure sale took place on June 6, 2000, as advertised.

At the foreclosure sale, Colonial Bank itself was the only bidder. The property was sold to the bank for $235,000, representing the full amount of the debt. Sometime after the sale, Heritage Creek's representative contacted Colonial Bank by letter requesting an opportunity to purchase the property from the bank. Colonial Bank responded by letter through its counsel, and offered to resell the subject property to Heritage Creek for $240,000, representing the amount of principal together with accrued interest, fees and expenses related to the foreclosure, provided Heritage Creek tendered payment of the full purchase price by June 16, 2000. The deadline passed, and Heritage Creek never made a tender of the purchase price. On July 7, 2000, Colonial Bank sold the property to RMT Construction, Inc. for $220,000.

Although Heritage Creek admits that it defaulted on the loan on more than one occasion, that its indebtedness was properly accelerated under the terms of its loan agreements, that Colonial Bank had the legal right to foreclose upon the subject property, that Colonial Bank had the right to purchase the property at the foreclosure sale, and that Heritage Creek never tendered payment of the purchase price of the property when given the opportunity to buy it after the foreclosure sale, it sued Colonial Bank, RMT Construction, and Gray & Gilliland, the law firm that handled the foreclosure. Heritage Creek claimed in this lawsuit that it was entitled to damages for, among other things, loss of equity in the eight subdivision lots which were the subject of the foreclosure sale.[1]

Heritage Creek moved for partial summary judgment on its actions for wrongful foreclosure and for damages for failure to cancel a security deed, arguing that the bank was liable as a matter of law because the foreclosure advertisement contained errors, and claiming that it was authorized under OCGA § 44-14-3 to recover damages for Colonial Bank's failure to timely transmit to the clerk of superior

---

[1] Counts relevant to the appeal are: Count 1 — breach of duty of good faith; Count 2 — wrongful foreclosure; Count 4 — foreclosure fraud; Count 5 — breach of contract based on calculation of interest and late charges; and Count 8 — damages for failure to timely cancel a security deed.

court a cancellation of the security deeds to two previously sold lots.[2] Colonial Bank, RMT Construction, and Gray & Gilliland filed cross-motions for summary judgment as to all counts of the amended complaint. The trial court denied Heritage Creek's motion for partial summary judgment, and granted motions for summary judgment made by Colonial Bank, RMT Construction, and Gray & Gilliland. From these rulings on the motions, Heritage Creek brings this appeal. For the reasons set forth below, we affirm the judgments of the trial court. And because we find this appeal so wholly lacking merit as to be frivolous, we assess a penalty of $1,000 against Heritage Creek and its attorney pursuant to Court of Appeals Rule 15 (b).

1. Heritage Creek contends the trial court erred in denying its motion for partial summary judgment, urging that the trial court erred in holding that Heritage Creek was required to show that the bank caused it to default on the loan. This enumeration is without merit.

In denying Heritage Creek's motion for partial summary judgment, the trial court agreed that the foreclosure advertisement was technically defective in that it included descriptions of two subdivision lots which had previously been sold to third parties.[3] But the trial court also found that Heritage Creek had not shown any causal connection between this technical defect and Heritage Creek's alleged injury, the loss of its equity in the eight lots which had not been released from the security deed and were the lots actually sold in the foreclosure sale.

Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages.[4] The trial court correctly ruled that even where a borrower has established duty and breach of duty, it still needs to show a causal connection between the defective notice and the alleged injury.[5]

Aside from the very real question of whether there is any evidence that Colonial Bank had breached any legal duty it owed to Heritage Creek under the circumstances of this case, the trial court

---

[2] OCGA § 44-14-3 (b) (1) requires the holder of a security deed to furnish to the superior court clerk a satisfaction or cancellation of the security deed within 60 days of the date of full payment. OCGA § 44-14-3 (c) provides for liquidated and other damages where, after written demand, the holder does not provide such cancellation. See discussion at Division 2, infra.

[3] Heritage Creek also argued below that the advertisement was defective because it failed to name the plaintiff as the party in possession of the property to be sold. It makes no such argument on appeal, so we need not address the issue.

[4] *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 286 (2) (443 SE2d 837) (1994).

[5] Id.

correctly pointed out that the undisputed evidence shows that Heritage Creek's alleged injury was solely attributable to its own acts or omissions both before and after the foreclosure. Not only did Heritage Creek default on the loan payments on multiple occasions, it failed to cure the default pursuant to the terms of the loan agreement; it received the foreclosure notice, but did not bid on the property at the foreclosure sale; and it requested and was granted an opportunity to repurchase the property after the foreclosure sale, then failed to tender the purchase price required by the terms of Colonial Bank's offer to sell the property back. Heritage Creek does not deny any of this, and it did not produce even a scintilla of evidence which shows any wrongdoing by the bank, or that any act or omission by the bank caused it to lose its equity in the eight lots which were sold in foreclosure.

Not every irregularity or deficiency in a foreclosure advertisement will void a sale.[6] Heritage Creek has not shown it was harmed in any way by the inclusion of two unavailable lots in the foreclosure ad's property description. Indeed, it had already sold those lots to third parties and had received full value for them years before the foreclosure occurred.[7] As the trial court noted, Heritage Creek failed to show in any particular how the end result would have been different had the appellees not included in the advertisement descriptions of the lots which had already been sold.

The trial court did not err in denying Heritage Creek's motion for partial summary judgment.[8]

2. The trial court agreed with Heritage Creek that Colonial Bank had failed to timely release lots 16 and 22 from its deed to secure debt as required by OCGA § 44-14-3. These are the same two lots discussed above. Despite this finding of the trial court, Heritage Creek was not entitled to summary judgment based on a violation of OCGA § 44-14-3.

OCGA § 44-14-3 (b) (1) provides, in relevant part, that when a secured debt is paid in full, the holder of the security deed shall, within 60 days of the date of full payment, transmit to the superior court clerk documentation authorizing the cancellation of the security instrument of record. OCGA § 44-14-3 (c) provides that upon the failure of the holder to transmit the cancellation, the holder shall, *upon written demand*, be liable to the grantor for liquidated damages of $500 plus additional sums for losses caused to the grantor. OCGA

---

[6] See *Oates v. Sea Island Bank*, 172 Ga. App. 178, 179 (2) (a) (322 SE2d 291) (1984) (in confirmation case, sale not void where ad shows wrong plat book number because the error did not contribute to chilling the sale price or voiding the advertisement).

[7] See generally *Barber v. Adams*, 145 Ga. App. 627, 628 (244 SE2d 149) (1978).

[8] See *Avery v. Cleveland Avenue Motel*, 239 Ga. App. 644, 645 (1) (521 SE2d 668) (1999).

§ 44-14-3 (c.1) provides that if a holder fails to transmit a cancellation document to authorize the clerk to cancel the instrument of record within 60 days after a written notice is mailed to the holder, the clerk is authorized and directed to cancel the instrument.

These lots were sold to third parties in 1997 and 1998. Heritage Creek paid Colonial Bank in full for the lots soon after the sales but, according to Heritage Creek's own appellate brief, it made no written demand for cancellation documents until October 23, 2002, more than four years after the property was sold. On January 17, 2003, less than three months after the written demand was made, the bank transmitted to the court clerk the cancellation documents.

Had Heritage Creek made a written demand for the documents soon after the properties sold, the bank might have been liable under the statute. But in 1999 and 2000, long before Heritage Creek filed this suit and made its written demand, it signed loan modification documents acknowledging that it had "no claims of any nature whatsoever, at law, in equity, or otherwise, against Lender as a result of any acts or omissions by Lender," that Heritage Creek "unconditionally waive[d] and release[d] Lender from and against any and all causes of action, suits, claims, counterclaims, offsets, damages, expenses, losses, liabilities and demands" that Heritage Creek may have against the bank regarding any occurrence whatsoever which happened on or before the date of the new agreement, and that "(a)ny and all such claims are hereby declared to be satisfied and settled and Borrower hereby discharges Lender from any liability with respect to any and all such claims." Thus, Heritage Creek waived any claims it may have had pertaining to the bank's failure to release the properties sold in 1997 and 1998.

Moreover, as the trial court found, Heritage Creek failed to show that OCGA § 44-14-3 authorized damages in the amount sought or that any losses it allegedly incurred were caused by the bank's failure to release the lots in a timely manner. Under the circumstances of this case, if anyone was damaged by the bank's failure to record the cancellations, it was the purchasers of the lots. The trial court did not err in denying Heritage Creek's motion for partial summary judgment based on this statute.

3. The trial court granted Colonial Bank's motion for summary judgment on all claims, holding that Heritage Creek failed to produce any evidence that the bank's actions were the cause of any injury it claimed to have sustained. The trial court also granted summary judgment to RMT Construction and Gray & Gilliland, though it did not state its reasons for doing so in the orders granting summary judgment. In three separate enumerations of error, Heritage Creek simply states that the trial court erred in granting these motions.

In support of its assertion that summary judgment was improper as to Colonial Bank, Heritage Creek claims that the court ignored evidence that the defective advertisement had a "chilling" effect on bidding, and that Colonial Bank and the law firm may have made remarks to potential bidders which dissuaded them from bidding on the property. We have carefully reviewed the entire record with respect to this claim. There is absolutely no evidence in this record on either of these points. These arguments are based not on evidence, but on speculation and conjecture.

Heritage Creek claims it was entitled to recover damages because, it alleges, the bank breached a duty of good faith and wrongly foreclosed on the property. It argues that, in addition to the defective advertisement, the bank and its customer, RMT Construction, acted in collusion in proceeding with the foreclosure. It is Heritage Creek's position that the bank and its attorneys, Gray & Gilliland, schemed to obtain the lots through foreclosure in order to transfer them to RMT Construction. Pretermitting the question of whether one can be liable for conspiring to do what one has a legal right to do,[9] Heritage Creek points to no evidence in the record of any such scheme or collusion, but bases its claim on pure speculation and conjecture.

As discussed above, Colonial Bank showed that it was entitled to judgment as a matter of law on the wrongful foreclosure count based on Heritage Creek's failure to produce any evidence of breach of duty, causation or damages.[10] There is no evidence in this record to support any conclusion other than that Colonial Bank did precisely what it was entitled to do according to the provisions of the loan instruments and Georgia law. There is absolutely no evidence that the bank engaged in "bid chilling" or that it otherwise breached any duty it had to Heritage Creek. Nor is there any evidence that Heritage Creek suffered damages as a result of any actions taken by Colonial Bank.

Colonial Bank was also entitled to judgment as a matter of law on the breach of duty of good faith claim because there is no independent cause of action for breach of duty of good faith in performing a contract governed by the UCC.[11] Inasmuch as Heritage Creek cannot prevail on its breach of contract claim,[12] it cannot prevail on a cause of action based on the failure to act in good faith in performing the contract.[13]

---

[9] See generally *Orr v. Sievert*, 162 Ga. App. 677, 680 (292 SE2d 548) (1982).

[10] See *Calhoun*, supra.

[11] See *Stuart Enterprises Intl. v. Peykan, Inc.*, 252 Ga. App. 231, 234 (2) (555 SE2d 881) (2001).

[12] See discussion later in Division 3.

[13] See *Stuart Enterprises*, supra.

Where the movant meets its burden of negating at least one essential element of the plaintiff's claims or otherwise pierces the plaintiff's allegations, the nonmoving party must produce rebuttal evidence sufficient to raise a triable issue.[14] Heritage Creek failed to produce any such evidence, and Colonial Bank was entitled to summary judgment on these claims.

Heritage Creek contends the court erred by granting summary judgment to the bank on its foreclosure fraud claim when the bank used the foreclosure process to deprive Heritage Creek of its equity and acquire the property for RMT Construction. It urges that the bank made false representations which were intended to deceive Heritage Creek, that Heritage Creek relied to its detriment on the representations, and that it incurred damages as a result.[15] Specifically, it claims that the bank's offer to allow Heritage Creek to redeem the lots after foreclosure was fraudulent as it never had any intent to consummate a sale of the lots to Heritage Creek.

It is undisputed that Heritage Creek defaulted on the loan, that Colonial Bank was entitled to accelerate the loan, and that Heritage Creek failed to tender the accelerated payoff amount by the deadline. Heritage Creek points to no authority which precluded Colonial Bank from proceeding with the foreclosure or subsequently finding a third party to purchase the property in the event Heritage Creek failed to redeem the property.[16] Moreover, Heritage Creek's claim for foreclosure fraud based on Colonial Bank's alleged lack of intent to honor its post-foreclosure agreement to permit Heritage Creek to repurchase the lots fails because Heritage Creek completely failed to act in acceptance of the offer by the deadline.

Heritage Creek maintains that the trial court erred in granting the bank's motion as to its breach of contract claim. It argues that the bank calculated interest and late charges using a method which allows interest to be charged on interest, but that OCGA § 7-4-17 prohibits such interest-on-interest calculations, except where the parties by written contract have agreed to such a provision. According to Heritage Creek, the 1998 loan documents do not allow interest to be compounded on interest, and only allow late charges of the lesser of $50 or five percent of the payment due, when the bank here charged in excess of $50.

However, as Colonial Bank points out, in August 1999 and February 2000, when Heritage Creek defaulted but brought the loan

---

[14] *Bunch v. Maytag Corp.*, 211 Ga. App. 546, 547-548 (1) (439 SE2d 676) (1993).

[15] See *GCA Strategic Investment Fund v. Joseph Charles & Assoc.*, 245 Ga. App. 460, 463-464 (3) (537 SE2d 677) (2000).

[16] See *Rapps v. Cooke*, 246 Ga. App. 251, 254 (1) (540 SE2d 241) (2000).

current and signed new modification agreements, it paid the accrued interest and other charges, and expressly waived any claims arising prior to the modification, without objecting to or challenging the method used to calculate interest or late fees. Accordingly, the breach of contract claim is barred by the release provisions contained in the modification agreements.

4. Heritage Creek contends the trial court erred in granting Gray & Gilliland's cross-motion for summary judgment, and in granting RMT Construction's cross-motion for summary judgment. Although Heritage Creek lists these as separate enumerations of error, it does not support these enumerations in its brief with separate arguments. Instead, it maintains that the same arguments which apply to the grant of summary judgment to the bank, apply to the grant of summary judgment to RMT Construction and the law firm. These enumerations are without merit for the same reasons Heritage Creek's arguments regarding the bank are without merit, and because there is absolutely no evidence that any act or omission by Gray & Gilliland or RMT Construction caused any injury to Heritage Creek. The trial court did not err in granting Gray & Gilliland's and RMT Construction's cross-motions for summary judgment.

5. Under the circumstances of this case, and given the clear state of the evidence and the applicable law, Heritage Creek and its attorney could not reasonably have believed that this appeal would result in a reversal of the trial court's judgments. Therefore, we find this appeal to be frivolous, and we impose a $1,000 penalty on Heritage Creek and its attorney pursuant to Court of Appeals Rule 15 (b). This penalty shall constitute a money judgment against Heritage Creek and its attorney, and in favor of Colonial Bank, RMT Construction, and Gray & Gilliland. It may be collected as are other money judgments.[17]

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED JULY 7, 2004.

*Karl M. Washington,* for appellant.

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Weissman, Nowack, Curry & Wilco, Frank O. Brown, Jr., Swift, Currie, McGhee & Hiers, Christopher D. Balch,* for appellees.

---

[17] See Court of Appeals Rule 15 (c).