## A05A0087. STAPP v. THE STATE.
(616 SE2d 215)

RUFFIN, Chief Judge.

A jury found Randy Stapp guilty of aggravated assault. On appeal, Stapp argues that the trial court erred in: failing to charge the jury on his sole defense; precluding him from calling his co-defendant to the stand; failing to give limiting instructions to the jury; and failing to have all proceedings transcribed. Stapp also contends that he received ineffective assistance of counsel. Because we agree that Stapp received ineffective assistance of trial counsel, we reverse.

---

Viewed in a light favorable to the verdict, the evidence demonstrates that Stapp was involved in a long-term relationship with Christy Penick, and the two lived together for seven years. In the summer of 2002, however, the two separated, and Penick married Mark Ward on July 1, 2002. Approximately one month later, Penick apparently had a change of heart, and she returned to Stapp.

On August 6, 2002, Stapp drove Penick to her mother's house. Judy Edge, Penick's mother, lived near Ward and had seen him earlier that day. Edge told Ward that "he couldn't stay because [Penick] was coming to get some clothes and [she] didn't want any trouble." According to Edge, Ward said, "I'll just hang around in my yard and let them know I'm around."

When Stapp and Penick arrived, Edge was inside her house. Penick, who appeared agitated, told her mother that Ward was heading toward them, and she asked for a baseball bat. Penick told Edge that Ward "will kill him." According to Ward, he and Stapp exchanged obscene gestures after which Stapp walked to the edge of Ward's driveway and "swung at [him]." Stapp, on the other hand, testified that Ward approached him, saying "I've been waiting on this." Stapp, who has an artificial leg, realized that he could not avoid a confrontation. Thus, he walked toward Ward, and the two met at the bottom of Edge's driveway. Stapp testified that Ward then "charged" him. Both men testified that blows were exchanged. According to Stapp, Ward was straddling him, "beat[ing] [his] eyes in." Stapp also testified that he was unable to move as Ward outweighs him by 60-70 pounds. Ward testified that Penick then jumped on his back and began hitting, kicking, and choking him.

At the beginning of the fight, Ward acknowledged that he did not see a knife in Stapp's hand. However, Ward testified that, during the fight, Stapp obtained a knife, which he used to cut Ward's hand. But Ward did not know who produced the knife. Stapp testified that Ward pulled the knife from his back pocket, after which the two struggled over it. At some point, Ward was stabbed in the leg, but he did not know who had stabbed him.

Penick's teenaged daughter, who lives with Edge, testified that later that evening, her mother came into her room with something in her hand. Penick told her daughter that she "never saw this." The daughter also saw Penick near a closet. The knife ultimately was found in a closet in Edge's house.

Stapp and Penick were tried jointly, and the jury found Stapp guilty of aggravated assault for "unlawfully mak[ing] an assault upon the person of Mark Ward with a deadly weapon, to-wit: a knife, by

cutting said victim in his right thigh and on his right hand."[1] On appeal, Stapp contends that his conviction must be reversed because he received ineffective assistance of counsel.[2]

In order to establish a claim of ineffective assistance, Stapp must demonstrate both that his counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different.[3] As this Court has held,

> [w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; and whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy.[4]

Here, we agree that trial counsel's performance was deficient in at least two respects — failure to adequately prepare and failure to pursue a defense.

At the hearing on Stapp's motion for new trial, counsel testified that five years ago, he stopped taking as many criminal cases and that, before he would accept a case, he would determine whether he thought it was "just a simple case" or a case in which a plea could be reached. Counsel's sole preparation consisted of interviewing Stapp and Penick, after which he determined it was a simple case "that probably wouldn't go to trial; [and] if it did, it would be easy to win." Thus, he charged Stapp the fee he normally charges for cases that he expects will not go to trial.

Prior to trial, counsel did not file any pre-trial motions nor did he opt into reciprocal discovery.[5] At the hearing, he freely admitted that his decision in this regard was not tactical. Counsel further testified

---

[1] Penick was found guilty of simple battery and hindering punishment by hiding the knife.

[2] In his brief, Stapp's appellate counsel alleges 33 instances of ineffective assistance, many of them duplicative or meritless. Although appellate counsel may have sought to impress this Court with the sheer number of alleged deficiencies, we find this scatter-shot approach unhelpful. See *Howren v. State*, 271 Ga. App. 55, 58 (5) (608 SE2d 653) (2004) (Georgia does not accept cumulative error doctrine as a means of establishing ineffective assistance). Given the page limitation on briefs, Stapp was unable to flesh out many, if not all, of his arguments on appeal, which made our job more difficult. Counsel would have better served both his client and this Court had he been more selective in his approach and fully developed his argument on appeal.

[3] See *Tenorio v. State*, 261 Ga. App. 609, 611 (3) (583 SE2d 269) (2003).

[4] *Skillern v. State*, 240 Ga. App. 34, 36 (3) (521 SE2d 844) (1999).

[5] Apparently, the State provided counsel with discovery immediately before trial.

that, had he obtained a copy of Ward's statement to police before trial, he would have been better prepared to cross-examine Ward. When counsel spoke with Penick, she told him that she had stabbed Ward. But Penick denied stabbing Ward more often than she admitted to it. Even so, counsel determined his strategy would be to call Penick to testify so he could ask her about her admission that she stabbed Ward. When he learned at the beginning of trial that Penick would not testify, counsel conceded that he should have sought severance of the trial, but did not do so in hopes that Penick would change her mind.

We question counsel's "strategy."[6] In view of the fact that Penick was a co-defendant, counsel had no means of compelling her to testify.[7] We also question counsel's decision to rely on Penick's testimony given her propensity for prevarication. Moreover, had Penick taken the stand and denied stabbing Ward, counsel would have been greatly hampered in his ability to impeach her testimony since he subpoenaed no witnesses.[8] Under these circumstances, we find counsel's strategy unreasonable.[9]

Furthermore, we find counsel's failure to request any jury instructions to be unreasonable. During trial, counsel acknowledged that self-defense was a viable defense. Nonetheless, counsel failed to request a charge on either this defense or on accident, which was, counsel conceded, another applicable defense. Counsel also acknowledged that, although it can "be an important thing to give the jury an alternative [to aggravated assault]," he did not request any charges on lesser included offenses. Again, the attorney testified that his decision in this regard was not strategic. Thus, the only offense the jury had to consider was aggravated assault, and it was not instructed that it could consider whether Stapp was acting in self-defense or whether the stabbing was accidental.

The State argues that counsel's decision not to request jury charges was strategic. However, this argument is belied by the record, which demonstrates that counsel performed minimal work on the case because he perceived it to be a simple case that he would easily win. Indeed, the attorney acknowledged that his failure to request jury instructions was not strategic.

---

[6] See *Benham v. State*, 277 Ga. 516, 518 (591 SE2d 824) (2004) (the mere fact that attorney's decision is purportedly strategic does not preclude decision from being an unreasonable one that no competent attorney would make).

[7] See *Duvall v. State*, 259 Ga. 801, 802 (2) (387 SE2d 880) (1990).

[8] See *Timberlake v. State*, 246 Ga. 488, 500 (7) (271 SE2d 792) (1980) (" 'When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.' ").

[9] See *Benham*, supra.

The State also suggests that self-defense was not applicable to the facts of the case because Stapp never admitted to stabbing Ward. As noted by Stapp's trial counsel, however, Stapp admitted to fighting Ward and there was considerable evidence that Ward was the aggressor. And the jury could have found that, during the fight, the stabbing was accidental. We agree that, generally, either accident *or* self-defense will be involved in a case — not both.[10] But our Supreme Court has ruled that "the facts of a case will, at times, present a situation where a party who is armed with a weapon contends that while he was defending himself from another party, his weapon accidentally discharged."[11] Here, Stapp admitted to struggling with Ward over a knife. Under these circumstances, Stapp arguably was entitled to an instruction that any stabbing was the result of an accident that occurred while he was defending himself, and his attorney was deficient for failing to request such instruction.[12]

Moreover, a reasonable probability exists that, but for the deficiency, the outcome of the trial would have been different.[13] The only two witnesses to testify regarding the fight itself were Stapp and Ward, who gave drastically different versions of the event. And Ward admitted that, days before the fight, he threatened to harm Stapp and that he would see his "blood run." Testimony was also presented that Penick feared Ward would harm Stapp, who weighed substantially less than Ward and who had an artificial leg. Given the evidence that Stapp was acting in self-defense, and counsel's concession that his failure to request any jury charges was not strategic, we find his conduct amounted to ineffective assistance. It follows that Stapp is entitled to a new trial.[14]

In view of this holding, we need not address Stapp's remaining allegations of error.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 23, 2005.

*McDonald & Cody, Phillip G. Cody, Jr.,* for appellant.

---

[10] See *Turner v. State*, 262 Ga. 359, 360 (2) (b) (418 SE2d 52) (1992).

[11] (Footnote omitted.) Id.

[12] Again, counsel's testimony at the hearing on Stapp's motion for new trial demonstrates that he recognized this as a viable strategy, but simply failed to pursue such defense.

[13] See *Tenorio v. State*, supra.

[14] See id.; *Gibbs v. State*, 270 Ga. App. 56, 60 (2) (606 SE2d 83) (2004); *Heath v. State*, 268 Ga. App. 235, 242 (601 SE2d 758) (2004) (" '(t)he record is replete with evidence of the total lack of any meaningful assistance provided to [the defendant]' ").

*Jason J. Deal, District Attorney, Gregory E. Radics, Wanda L. Vance, Assistant District Attorneys*, for appellee.