## A06A0825. ALL FLEET REFINISHING, INC. et al. v. WEST GEORGIA NATIONAL BANK.
### (634 SE2d 802)

RUFFIN, Chief Judge.

West Georgia National Bank ("the Bank") brought an action against All Fleet Refinishing, Inc., Joel Walker, and Patricia Walker (collectively, "All Fleet"), alleging claims for conversion of collateral, interference with contract, and for collection on promissory notes.[1] All Fleet counterclaimed, asserting multiple causes of action. The parties filed cross-motions for summary judgment. The trial court granted the Bank's motion, disposing of all counterclaims, and it denied All Fleet's motion. In 17 enumerations of error, All Fleet appeals.[2] For reasons discussed below, we affirm.

A trial court properly grants a motion for summary judgment when there is no genuine issue of material fact and the movant demonstrates entitlement to judgment as a matter of law.[3] We review, de novo, a grant of summary judgment, viewing the evidence, and all reasonable conclusions and inferences drawn therefrom, in a light most favorable to the nonmovant.[4]

Viewed in this manner, the record establishes that, beginning in 1997, the Bank made several loans to All Fleet, totaling approximately $500,000.[5] Joel and Patricia Walker, the sole owners of All Fleet, personally guaranteed the loans. In July 1997, the Bank filed a UCC-1 Financing Statement, establishing itself as a secured creditor and asserting security interests in All Fleet's "business accounts

---

[1] The Bank also filed suit against James Wallis, Jr., and Smith, Wallis & Scott, LLP. However, the Bank settled with these defendants, who are not parties to this appeal.

[2] We note that All Fleet's counsel has done a disservice in failing to limit and/or consolidate appellants' enumerations of error. As a general rule, the scatter-shot approach to brief writing is unhelpful as, given the page limitation on briefs, it generally prevents a party from fully fleshing out potentially meritorious arguments on appeal. See *Stapp v. State,* 273 Ga. App. 899, 901, n. 2 (616 SE2d 215) (2005). To the extent any enumerated error lacks meaningful argument or citation of authority, it will be deemed abandoned. See *City of College Park v. Sheraton Savannah Corp.,* 235 Ga. App. 561, 564 (6) (509 SE2d 371) (1998); Court of Appeals Rule 25 (c) (2).

[3] See *AKA Mgmt. v. Branch Banking & Trust Co.,* 275 Ga. App. 615, 616 (621 SE2d 576) (2005).

[4] See id.

[5] Although the Bank cites portions of the "Walker deposition" to support its factual allegations in this regard, we note that this transcript is not included in the record. This omission has greatly hampered our review of this matter.

receivable, inventory, contract rights and general intangibles now owned and hereafter acquired."

All Fleet began to experience financial difficulties, which it attributed to a commercial tort allegedly committed against it by a former employee named Brandenburg. As a result, All Fleet had difficulty meeting its loan obligations. Rather than declaring All Fleet in default, the Bank attempted to work with All Fleet and accepted interest only payments, extended due dates, and continued to extend credit. As of April 2001, however, All Fleet was apparently unable to make even the interest only payments.

All Fleet filed suit against Brandenburg and ultimately obtained a judgment of over $300,000 ("Brandenburg judgment"). Pursuant to the UCC-1 Financing Statement, the Bank claimed an interest in the proceeds from the Brandenburg judgment. The Bank, through its attorney, sent letters to All Fleet's counsel and the Walkers, notifying them that it claimed such interest. In one such letter to Mr. Walker, the Bank wrote,

> [w]e remind you that the sale or disposition of encumbered collateral would constitute the criminal act of theft by conversion under Georgia law, and that any agreement or arrangement entered into with the intent to deprive a creditor of its collateral will constitute a criminal conspiracy under Georgia law. The Bank intends to prosecute any person or entity that may engage in any such acts with respect to the Bank's collateral.

Notwithstanding the Bank's claim to the proceeds from the tort judgment, none of the proceeds was paid to the Bank. Rather, All Fleet distributed over $100,000 to its attorneys, paid an unsecured creditor $50,000, and retained the balance of the proceeds. At some point, the Bank and All Fleet discussed an agreement in which All Fleet agreed to give the Bank $60,000 from the Brandenburg judgment — and confirm a security interest therein — in exchange for the Bank's forbearance on collecting the debt. On October 19, 2001, the Bank gave the Walkers a document, which reflected the agreement. Because the Bank officers believed the Walkers were refusing to sign it, the Bank withdrew the agreement on October 24, 2001. On October 26, 2001, the Walkers signed the document. However, the Walkers never attempted to tender payment in accordance with this alleged agreement. In 2002, the Bank began foreclosure proceedings pursuant to the promissory notes and security agreements. These proceedings were stopped when the Walkers and All Fleet filed for bankruptcy.

The Bank subsequently filed suit against All Fleet and the Walkers, who counterclaimed for multiple alleged torts including RICO. violations, intentional infliction of emotional distress, intentional interference with business relations, wrongful foreclosure, slander of title, defamation, and invasion of privacy. After the Bank moved for partial summary judgment, the trial court dismissed all counterclaims asserted by All Fleet. This appeal ensued.

1. According to All Fleet, the trial court improperly granted summary judgment without considering certain deposition transcripts. Specifically, All Fleet maintains that the court erroneously considered only excerpts from depositions that the Bank attached to its motion for summary judgment, instead of the entire deposition transcript that purportedly revealed disputes of fact. Although All Fleet attempted to supplement the record to include the additional transcripts, it did not do so until after the trial court ruled on the summary judgment motion. This presents no basis for reversal.

Pursuant to OCGA § 9-11-56 (a), motions for summary judgment may be served "at any time after the expiration of 30 days from the commencement of the action." The trial court then bases its ruling on "the pleadings, depositions, answers to interrogatories, and admissions *on file*, together with the affidavits."[6] "The burden of timely filing depositions and other discovery material with the trial court lies with the party [that] seeks to rely upon it."[7] Here, oral argument on the motion for summary judgment was conducted on May 11, 2005. The trial court ruled on the motion by order dated June 28, 2005. By All Fleet's own admission, it did not file the transcripts until July 1, 2005. And the trial court cannot be faulted for failing to consider deposition transcripts that were not in the record at the time of its ruling on summary judgment.[8]

2. In three enumerations of error, All Fleet asserts the trial court erred in granting summary judgment on its RICO claim. "To establish liability for a RICO violation, [All Fleet] must establish a pattern of racketeering activity."[9] "A 'pattern' means engaging in at least two incidents of racketeering activity, which is defined as the commission of a crime in any of 37 specified categories of offenses."[10] Here, All

---

[6] (Emphasis supplied.) OCGA § 9-11-56 (c).

[7] *Sheffield v. Zilis*, 170 Ga. App. 62, 64 (2) (316 SE2d 493) (1984).

[8] To the extent that All Fleet contends that the trial court was not authorized to consider excerpts of deposition transcripts, we find such contention similarly flawed. See OCGA § 9-11-29.1 (a) (5); *Jacobsen v. Muller*, 181 Ga. App. 382, 383 (3) (352 SE2d 604) (1986).

[9] *Blakey v. Victory Equip. Sales*, 259 Ga. App. 34, 39 (2) (f) (576 SE2d 288) (2002).

[10] *Allen v. Jones*, 269 Ga. App. 607, 608 (1) (604 SE2d 644) (2004); see also OCGA § 16-14-3 (9).

Fleet alleges that the Bank engaged in attempted extortion, attempted theft by deception, conversion, mail fraud, wire fraud, and perjury. Upon reviewing the actual record citations provided by All Fleet, it is apparent that all of these allegations stem from the Bank's actions in asserting a security interest in the Brandenburg judgment.

Although All Fleet does not articulate its position well on appeal, it seems that the crux of its argument is that, under the Georgia UCC, the Bank could not legally have asserted a claim in the proceeds from the Brandenburg judgment.[11] Thus, under All Fleet's reasoning, all of the actions the Bank took in this regard were illegal. It does not appear that there is any Georgia case on point. However, courts from other jurisdictions have addressed this issue and reasoned that, once a tort claim has been reduced to a contractual obligation to pay, the payment becomes a "payment intangible" in which a creditor may assert an interest.[12]

Pretermitting whether that is the case in Georgia, we find that the Bank at the very least had a cognizable claim to the proceeds from the Brandenburg judgment. And given the existence of a cognizable claim, we fail to see how the Bank's actions in asserting such claim could be considered predicate acts for purposes of civil RICO violations. The General Assembly enacted the RICO statutory framework to deter *criminal* conduct and "to impose sanctions against those who violate [RICO] and to provide compensation to persons injured or aggrieved by such violations." It does not appear that the intent of the General Assembly was "that isolated incidents of misdemeanor conduct or acts of civil disobedience be prosecuted under this chapter."[13] We do not find that the legislature intended to proscribe the conduct alleged here — a Bank's attempts to secure payment of a debt through legal means.[14] Accordingly, we find no error in the trial court's ruling that All Fleet failed "to offer evidence of 'a pattern of racketeering' to support a RICO claim."

In a related argument, All Fleet asserts that the Bank "merely presented argument in the nature of a motion to dismiss alleging that [All Fleet's] allegations were not sufficient, and the trial court erred to the extent it required [All Fleet] to produce evidence in response to

---

[11] This argument appears predicated on the assumption that, under the Georgia UCC, a party cannot assign an interest in certain tort claims. See OCGA § 11-9-109 (d) (12) and its predecessor statute. The Bank argued that since the claim had been reduced to an actual judgment, there was no such bar.

[12] See *Chorney v. Peachtree Settlement Funding*, 277 BR 477, 488 (Bankr. W.D. N.Y. 2002); *Nolin Production Credit Assn. v. Stone*, 52 BR 305 (Bankr. W.D. Ky. 1985).

[13] See OCGA § 16-14-2 (b).

[14] See, e.g., *Sevcech v. Ingles Markets*, 222 Ga. App. 221, 222 (1) (474 SE2d 4) (1996) allegations that business engaged in pattern of falsely accusing patrons of shoplifting not conduct proscribed by RICO).

[the Bank's] legal arguments." All Fleet cites *Bruno's Food Stores v. Taylor*[15] for the proposition that, on motion for summary judgment, the nonmovant is not required to produce evidence unless the movant — here, the Bank — first presents evidence to pierce its pleadings. All Fleet, however, misconstrues this case, which makes clear that a *defendant* may pierce the plaintiff's pleadings and establish entitlement to summary judgment simply "by showing that no jury issue exists as to an essential element of the plaintiff's claim."[16] In other words, a defendant need only point to the *absence* of evidence to support an essential element of the plaintiff's claim.[17] The burden of production then shifts to the *plaintiff* — in this instance, All Fleet — to present evidence sufficient to create a factual issue.[18]

Here, all of All Fleet's RICO allegations stem from the Bank's allegedly illegal conduct in asserting a nonexistent security interest in the Brandenburg judgment. Thus, the Bank met its burden on summary judgment by contending that it had a valid interest in those proceeds. To refute this contention, the burden shifted to All Fleet to produce evidence to the contrary.[19] All Fleet has not demonstrated on appeal that it met this burden. And, as the appellant, it is axiomatic that All Fleet bears the burden of showing error affirmatively by the record.[20] Accordingly, we will not reverse on this basis.[21]

3. The Walkers also contend that the trial court erred in disposing of their claim for tortious interference with business relations. Once again, however, the Walkers base their argument on a misreading of *Bruno's Food Stores v. Taylor*.[22] In any event, we fail to see how the Walkers could sustain a tortious interference claim. In order to recover for tortious interference with business relations, the Walkers must demonstrate that the Bank: "(1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with [them], and (4) caused [them] financial injury."[23] In their amended pleadings, the Walkers assert that the Bank's wilful, malicious, and wanton conduct forced All Fleet out of business and cost them their jobs. In other words, the Walkers allege

---

[15] 228 Ga. App. 439 (491 SE2d 881) (1997).

[16] Id. at 441.

[17] See *Legacy Investment Group v. Kenn*, 279 Ga. 778, 780 (1) (621 SE2d 453) (2005).

[18] See id.

[19] See id.

[20] See *Luong v. Tran*, 280 Ga. App. 15, 16 (2) (633 SE2d 797) (2006).

[21] See id.

[22] Supra.

[23] (Punctuation omitted.) *Cochran v. Mullinax*, 276 Ga. App. 81, 86-87 (3) (622 SE2d 455) (2005).

that the Bank interfered with the contract between them and All Fleet. However, Joel and Patricia Walker are the sole owners of All Fleet. Thus, we fail to see how All Fleet can be considered a third party for purposes of a tortious interference claim. Under these circumstances, the trial court did not err in granting summary judgment on this claim.[24]

4. In three enumerations of error, All Fleet challenges several of the trial court's factual findings with respect to its default on the promissory notes and the Bank's alleged attempt to foreclose on All Fleet's property. The arguments in this regard are not particularly well articulated. It appears the crux of All Fleet's argument is that the trial court erred in dismissing its wrongful foreclosure claim. The trial court made two factual findings in this regard: (1) that no foreclosure had taken place; and (2) that All Fleet was unable to establish that the Bank's action caused the default. We address each finding in turn.

(a) According to All Fleet, the trial court erred in finding no foreclosure took place because the Bank ultimately foreclosed on November 1, 2005. All Fleet provides no citation to support this factual assertion, and "[t]he burden is on the party asserting error to show it affirmatively in the record, [as] we will not cull the record on appellant's behalf."[25] Of course, even if we were to cull the record, it would be of no assistance as the foreclosure apparently took place several months after the trial court ruled.[26] Thus, contrary to All Fleet's argument, the trial court clearly did not err in finding that no foreclosure had taken place when it issued its ruling.

(b) In order to sustain a claim for wrongful foreclosure, All Fleet must establish that: the Bank owed it a legal duty; the Bank breached that duty; there is a causal connection between the breach of duty and injury sustained; and All Fleet incurred damages.[27] All Fleet contends the Bank breached its duty "by not allowing it to bring its loans current."[28] Pretermitting whether the Bank — having departed from strict compliance with the loan documents — breached a duty to All Fleet, we fail to see how All Fleet has established entitlement to

---

[24] See id.; *Tidikis v. Network &c. Research*, 274 Ga. App. 807, 812 (4) (619 SE2d 481) (2005).

[25] *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006).

[26] Although All Fleet alleged in its third amended counterclaim that the Bank wrongfully foreclosed before August 2, 2002, All Fleet concedes in its appellate brief that the foreclosure occurred on November 1, 2005.

[27] See *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (1) (601 SE2d 842) (2004).

[28] In a separate enumeration of error, All Fleet challenges the trial court's factual finding that it was in default. The note/security agreements define default as All Fleet's "fail[ure] to keep any promise contained in the terms of this agreement[,]" which includes a promise to pay. Given All Fleet's admission that the loans were not current, we find this argument troubling.

reversal. The trial court based its ruling not on breach of duty, but on causation. Here, the record shows that All Fleet experienced financial difficulties as a result of an alleged tort by a former employee and that it had been unable to meet any payment obligations since April 2001. Under these circumstances, the trial court's conclusion that All Fleet failed to establish causation appears well-founded.[29] And, despite listing 17 enumerations of error, it does not appear that All Fleet challenges this ruling.[30]

5. According to the Walkers, the trial court erred in disposing of their "emotional distress" claim. The Walkers once again cite *Bruno's Food Stores v. Taylor* for the proposition that they were not required to produce evidence of emotional distress and/or extreme and outrageous conduct because the Bank "presented no evidence in its motion to refute [the] emotional distress claims." However, the Bank clearly argued on motion for summary judgment that the Walkers failed to establish all elements of such claim, which sustained its burden. And where the moving party is the defendant, it only needs to show an *absence* of evidence to support an essential element of the plaintiff's claim to prevail on summary judgment.[31] Thus this argument lacks merit.

6. Employing the same argument, All Fleet contends that the trial court improperly granted summary judgment on its libel and slander claims. Again, however, All Fleet completely misconstrues a defendant's burden on motion for summary judgment. The Bank challenged All Fleet's claims for libel and slander on motion for summary judgment, shifting the burden to All Fleet to produce evidence sufficient to create a jury issue.[32] On appeal, All Fleet broadly asserts that it "properly alleged [its] libel and slander claims" and invites this Court to read "one of [its] briefs to the trial court" for further clarification. Given the page limitation on briefs, All Fleet was apparently unable or unwilling to flesh out this particular argument on appeal. We will not, however, rescue All Fleet by allowing it to bootstrap additional arguments to its brief in this manner. Indeed, to do so would eviscerate this Court's rule requiring

---

[29] See *Heritage Creek*, supra.

[30] All Fleet does broadly assert that the Bank "presented no evidence to dispute the allegations of [All Fleet] which clearly shows that [the Bank's] actions did lead to foreclosure." This again appears to be based upon a misreading of *Bruno's Food Stores*, supra. In any event this type of conclusory statement is not the "meaningful argument" contemplated by this Court's rules. See *Parrott v. Fairmont Dev.*, 256 Ga. App. 253, 256 (1) (c) (568 SE2d 148) (2002).

[31] See *Legacy Investment Group*, supra.

[32] See *Bruno's Food Stores*, supra.

litigants to limit the length of briefs.[33] Given the lack of meaningful argument in the brief on appeal, we deem this enumeration of error abandoned.[34]

7. In three enumerations of error, All Fleet challenges several of the trial court's factual findings regarding the Brandenburg settlement.

(a) According to All Fleet, the trial court erred in holding that although "the 'Brandenburg' settlement started out as a tort claim; it ceased being such and became a cash settlement when it was reduced to a judgment and the insurer issued a check." Pretermitting whether this factual finding was unsupported, we find no basis for reversal. " 'An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful.' "[35] As All Fleet has failed to establish that it was harmed by this factual finding, we will not reverse.

(b) Initially, the Bank also sued All Fleet's law firm for allegedly converting a portion of the Brandenburg judgment, and the law firm instituted several counterclaims. The Bank and the law firm filed cross-motions for summary judgment. Before the trial court ruled on these motions, the Bank and law firm reached a settlement agreement. In its order, the trial court noted that "[t]his settlement resolves most, if not all, issues arising out of the 'Brandenburg' tort claim."

On appeal, All Fleet takes issue with this finding, asserting inter alia that "[t]he settlement did not redress All Fleet's breach of contract claims nor did it redress the tortious conduct of [the Bank] and the harm that that conduct caused [All Fleet]. . . . In addition, [the Bank's] settlement with [the law firm] did not redress the RICO violations engaged in by [the Bank]." All Fleet makes other similar arguments, recycling all of its counterclaims. But such arguments are meritless, as the trial court specifically addressed each counterclaim listed. In other words, its factual finding regarding the Brandenburg judgment did not prevent it from reaching the merits of All Fleet's counterclaims. Under these circumstances, we fail to see how All Fleet was harmed by this alleged error.[36]

(c) All Fleet also contends that "[t]he trial court erred in holding that the issue of [the Bank's] security interest in the Brandenburg tort claim was rendered moot since [All Fleet] denied [the law firm] the right to represent them in regard to their debt to [the Bank]."

---

[33] See Court of Appeals Rule 24 (f).
[34] See *Parrott*, supra.
[35] *Gantt v. Bennett*, 231 Ga. App. 238, 242 (3) (499 SE2d 75) (1998).
[36] See id.

Beyond this, however, All Fleet provides no reference to the record, cites no authority, and makes no cogent argument. Under these circumstances, any claim of error is deemed abandoned.[37]

8. All Fleet also contends the trial court erred in finding that it has " 'not offered any proof in support of [its] counterclaims' and in holding that 'there must be specific evidence sufficient to maintain independent counterclaims.' " All Fleet appears to predicate this argument on its continued misapprehension of a *defendant's* burden of proof on summary judgment. For reasons discussed above, this argument lacks merit.

9. In three enumerations of error, All Fleet challenges the trial court's factual findings with respect to the Bank's alleged agreement with All Fleet to forbear on collecting its debt. According to All Fleet, the parties reached an oral agreement for All Fleet to grant the Bank a $60,000 security interest in the Brandenburg judgment in exchange for the Bank's continued forbearance on the loans. The Bank, on the other hand, asserts that such agreement was never reached and that its offer to accept $60,000 was a mere offer. According to the Bank, it withdrew this offer before the Walkers accepted it, and thus no binding contract exists. The trial court agreed with the Bank, finding that "[a]t best, [the Bank's] offer to accept a $60,000 payment on the debt to prevent foreclosure was simply that, an offer." The trial court also found that there was insufficient consideration for such agreement because All Fleet was already obligated to pay the Bank. Although we reject the trial court's first assertion, we agree with the latter.

Although the Bank broadly asserts that no agreement was reached, All Fleet has pointed to contrary evidence. Specifically, All Fleet points to the deposition testimony of two Bank officers stating that such agreement had been reached. While the Bank now attempts to characterize the alleged agreement as a mere offer, "where there is a conflict in the evidence as to the existence of an oral contract or as to its terms, the matter must be submitted to a jury for resolution."[38] Accordingly, the trial court erred in granting summary judgment on this basis.[39]

Nonetheless, we do find that summary judgment on this claim was proper on the other basis asserted in the trial court's order. As noted by the trial court, "[a]n agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for

---

[37] *Chancellor v. Gateway Lincoln-Mercury*, 233 Ga. App. 38, 45 (4) (502 SE2d 799) (1998)

[38] *Fay v. Custom One Homes*, 276 Ga. App. 188, 191 (1) (a) (622 SE2d 870) (2005).

[39] See id.

the promise of another."[40] The record shows that payment of the $60,000 would have made All Fleet current on its payments. It conferred no additional benefit to the Bank. And as All Fleet was already obligated to pay the Bank the money under the various loan documents, the trial court properly found that the agreement only obligated All Fleet to do that which it was *already* legally obligated to do and thus lacked consideration.[41] Under these circumstances, the trial court properly found that the Bank was entitled to judgment as a matter of law.[42]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 7, 2006 —
RECONSIDERATION DENIED JULY 26, 2006.

*H. L. Cromartie III*, for appellants.
*Sutherland, Asbill & Brennan, Richard L. Robbins, Andrew W. Broy*, for appellee.

---

[40] (Punctuation omitted.) *Owings v. Ga. R. Bank & Trust Co.*, 188 Ga. App. 265, 266 (372 SE2d 825) (1988).
[41] See id.
[42] See id.; *Citizens Trust Bank v. White*, 274 Ga. App. 508, 511 (1) (618 SE2d 9) (2005).