[No. B057680. Second Dist., Div. Six. June 18, 1992.]

RICHARD STEIN et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and
Appellant.

## COUNSEL

Engstrom, Lipscomb & Lack and Stephen L. Nelson for Plaintiffs and Appellants.

Benton, Orr, Duval & Buckingham, James T. Sherren and Brenda L. DeHart for Defendant and Appellant.

## OPINION

STONE (S. J.), P. J.—Southern California Edison Company (hereinafter Edison) appeals from a judgment after jury trial imposing damages of $390,290.72 in favor of Richard Stein, Ellen Stein, and California Fair Plan Association (hereinafter the Steins) and prejudgment interest of $43,645.24 awarded by the trial court. Edison contends that the trial court should not have allowed the jury to decide the issue of strict liability and should not have awarded prejudgment interest. The Steins cross-appeal from the court's order awarding prejudgment interest.

The Steins claim they were entitled to prejudgment interest from a date earlier from the date Edison received notice of the damages.[1] We affirm the judgment and order after judgment.

### FACTS

On September 28, 1988, the Steins' house at 2252 Las Canoas Road in the Mission Canyon area of Santa Barbara, was heavily damaged by fire. One of Edison's crews, who were in the area due to a power outage, initially reported the fire. The fire department investigator found that the flames concentrated in the electric service meter area and that the fire originated at the meter panel. He opined that the fire was of electrical origin and was caused by an electrical fault from outside the house.

The electrical power to the house was supplied by a pole-mounted transformer located near the house. The transformer changed the voltage of

---

[1]All statutory references hereinafter are to the Civil Code unless otherwise specified.

electricity from 16,000 volts from the high voltage lines to normal household 120/240 voltage. The transformer was connected to the house by service drop lines which attach at a weatherhead and service meter. The service meter plugs into a socket in the main service/meter panel from where the electricity is conducted to feeder connectors which carry the electricity to a circuit breaker panel inside the house.

The transformer had been modified by Edison by disabling the circuit breakers so that it could carry up to 200 to 220 percent of its normal capacity which caused a degradation and breakdown of the insulation on the transformer windings. This breakdown resulted in an electrical arc sending high voltage into the meter attached to the Steins' house. The meter exploded causing the fire. At trial, Edison's experts testified that there was no overvoltage and that the cause of the fire was an electrical fault in the house wiring. The Steins' expert testified that the transformer on the pole failed and that the high voltage surge of electricity never entered the house but went into the meter, exploding it and starting the fire.

Edison moved for nonsuit on the strict liability cause of action alleging that the electricity was a service and not a product. The court denied the motion. Steins dismissed other causes of action and only the cause of action for strict liability in tort went to the jury. After the jury's verdict in their favor, the Steins moved for prejudgment interest which the court awarded from date of notice of the claimed damages to Edison. These cross-appeals followed.

DISCUSSION

1. *The Judge Properly Instructed the Jury on Strict Liability.*

■ Edison asserts that the issue of strict liability in tort should not have been presented to the jury. It acknowledges that under California law, electricity can be a product subject to the principles of strict liability. The issue, Edison argues, is at what point electricity enters the stream of commerce and becomes subject to the application of strict liability. According to Edison, case law both in California and elsewhere hold that electricity does not become a "product," as opposed to a "service," for purposes of imposing strict liability in tort until after it passes through the customer's meter. Since the electricity here entered into the meter and the meter exploded before the electricity passed through it to the house, Edison contends that strict liability does not apply.

The Steins counter that the California cases adopting the "through-the-meter" rule were not true defective electricity cases in which the rule was

necessary to their holding. They urge us to jettison the "through-the-meter" stream of commerce test and to adopt the approach of *Pierce* v. *Pacific Gas & Electric Co.* (1985) 166 Cal.App.3d 68 [212 Cal.Rptr. 283, 60 A.L.R.4th 709] as the correct statement of California law.

In *Pierce, supra,* a huge surge of power traceable to a defective transformer electrified the plaintiff's propane gas system which was improperly grounded to the electrical system, causing plaintiff's injury when she attempted to turn off the propane gas. The appellate court concluded that Pacific Gas & Electric Company, as a commercial supplier of electricity, is subject to strict liability in tort for personal injuries caused by delivery of electricity at dangerously high voltage due to a defective transformer. (166 Cal.App.3d at pp. 83-84.)

*Pierce* limited its holding to cases "where the electricity is actually in the 'stream of commerce,' and expected to be at marketable voltage. In most cases this will mean the electricity must be delivered to the customer's premises, to the point where it is metered, although the many variations in electrical systems prevent our drawing a 'bright line' at a particular point." (166 Cal.App.3d at p. 84, fn. omitted.) *Fong* v. *Pacific Gas & Electric Co.* (1988) 199 Cal.App.3d 30 [245 Cal.Rptr. 436], which followed *Pierce,* did not hesitate to draw a "bright line." In *Fong,* plaintiff alleged that defendant's wires were improperly insulated where they entered the weatherhead and allowed arcing which melted the insulation and wires, causing molten aluminum to drop on their garage roof and start a fire. The reviewing court in *Fong* held that the trial court improperly instructed the jury on strict liability. The court cited *Pierce* for the proposition that a product must be marketed, or in some manner be placed in the stream of commerce, for imposition of strict liability and also *United Pacific Co.* v. *Southern Cal. Edison Co.* (1985) 163 Cal.App.3d 700 [209 Cal.Rptr. 819] which held that no strict liability lies where a kite entangled in power lines caused arcing which started a fire. (199 Cal.App.3d at p. 36.)

*Fong* held that electricity enters the stream of commerce when it leaves the transmission lines and passes through the customer's meter and not the moment the wires cross plaintiff's property line. (199 Cal.App.3d at pp. 37-38.)

*Mancuso* v. *Southern Cal. Edison Co.* (1991) 232 Cal.App.3d 88 [283 Cal.Rptr. 300], the most recent California case to discuss this issue, involved lightning-generated electricity which traversed Edison's service conductors to plaintiff's building and caused sparks and flames along the entire length of the service wires. (*Id.,* at p. 92.) When it reached plaintiff's building its

high level of energy caused one of the meter panels on the premises to explode, resulting in fire in plaintiff's shop. (*Ibid.*)

The appellate court reviewed the holdings in *United Pacific Co. v. Southern Cal. Edison Co., supra,* 163 Cal.App.3d 700, *Pierce,* and *Fong,* and the policy considerations for imposing strict liability, i.e., spreading the risk of loss among consumers, creating an economic incentive to improve the "product," and easing the plaintiff's burden of proving liability in difficult and complex cases. (232 Cal.App.3d at p. 97.)

*Mancuso* discussed *Fong's* reliance on *Pierce* and several out-of-state cases which concluded that electricity is deemed to enter the stream of commerce when it leaves the transmission lines and passes through the customer's meter. (232 Cal.App.3d at p. 100; see, e.g., *Schriner v. Pa. Power & Light Co.* (1985) 384 Pa.Super. 177 [501 A.2d 1128].) *Mancuso* stated that electricity which has passed through the consumer's meter has been sold and delivered, is in the stream of commerce and marketed, but that lightning-generated electricity is not a product because it has not been marketed nor placed in the stream of commerce. (232 Cal.App.3d at p. 101.)

The Steins insist that *Pierce* is the only true defective electricity case decided in California to date and that *Pierce* requires only that the electricity must be intended and expected to be at a marketable voltage, and must be delivered or provided to a point where it is intended to be available for use by the customer, i.e., "[i]n most cases . . . to the point where it is metered, . . ." (166 Cal.App.3d at p. 84.) Further, the Steins assert that *Fong* and *Mancuso* cited no California authority supporting the "pass-through-the-meter" test, but rely on language from out-of-state cases, such as *Schriner v. Pa. Power & Light Co., supra,* 501 A.2d 1128 and *Williams v. Detroit Edison Co.* (1975) 63 Mich.App. 559 [234 N.W.2d 702].

Cases such as *Schriner, supra,* in other jurisdictions which discuss electricity as a "product" for the purposes of imposition of strict liability generally rely on either the Restatement Second test which requires a sale of the product or are decided in jurisdictions whose statutory or case law require a sale of a product for imposition of strict liability in tort. (But see *Aversa v. Public Service Electric & Gas Co.* (1982) 186 N.J.Super 130 [451 A.2d 976, 980], which held that a sale is not an absolute prerequisite to a finding that a product has been placed in the stream of commerce and *Public Service Indiana, Inc. v. Nichols* (Ind.Ct.App. 1986) 494 N.E.2d 349, 355, which held that electricity is considered to be placed into the stream of commerce when it reaches its destination in a home or factory.) Where a sale is necessary for a product to be placed in the stream of commerce, it is

usually passing through a meter that triggers the sale. However, in California, a sale of the product is not necessary for imposition of products liability; the object must be "place[d] on the market, knowing that it is to be used without inspection for defects, . . ." (*Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 250 [85 Cal.Rptr. 178, 466 P.2d 722].)

We agree with the Steins that *Pierce* is factually closer to the instant case. Although passing through the customer's meter will generally indicate when electricity has been "sold," there are other ways, as *Pierce* indicated, in which electricity may be found to have left the control of the utility company. However, we, as did *Pierce*, decline to delineate the particular point at which it can be said that electricity enters the stream of commerce for all purposes. "[T]he many variations in electrical systems prevent our drawing a 'bright line' at a particular point." (*Pierce* v. *Pacific Gas & Electric Co.*, *supra*, 166 Cal.App.3d 68, 84.) Here the electricity passed into the meter. The only reason a "sale" was not triggered was because the meter exploded. The electricity had effectively passed from Edison's lines into the meter and to the consumer's house. The trial court did not err in allowing the issue of strict liability to go to the jury.

## 2. *Trial Court Correctly Awarded Prejudgment Interest.*

Edison asserts that the trial court erred in awarding prejudgment interest because the damages were not made certain prior to trial. Furthermore, Edison asserts, there is no way to tell from the court's order whether it awarded interest under section 3287, subdivision (a), or upon section 3288, which the Steins raised as a basis for an award in a posttrial and posthearing written argument.[2]

Damages are deemed certain or capable of being made certain within section 3287, subdivision (a), where there is essentially no dispute between the parties concerning the basis of imposition of damages that are recoverable but where the dispute centers on the issue of liability giving rise to the damage. (*Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1172-1173 [286 Cal.Rptr. 146].) Two tests apply in deciding the certainty required by section 3287, subdivision (a): (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages, i.e., whether they are reasonably calculable. (234 Cal.App.3d

---

[2]Section 3287, subdivision (a), provides that "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . ." Section 3288 provides that "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."

at p. 1173.) Denial of liability on the main theory does not make the damage uncertain within the meaning of section 3287. (*Credit Managers' Assn.* v. *Brubaker* (1991) 233 Cal.App.3d 1587, 1595 [285 Cal.Rptr. 417].)

Section 3288, on the contrary, allows interest from date of monetary loss at the discretion of the trier of fact even if the damages are unliquidated. (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 102 [160 Cal.Rptr. 733, 603 P.2d 1329]; *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].)

■ The Steins contend that they are entitled to prejudgment interest under either section, that Edison waived any objection to an award under section 3288, and that the court erred in not allowing interest from date of loss. The trial court's award of prejudgment interest from the date of the complaint is supported by both the record and the law.

Edison did not waive any objection to an award under section 3288. The Steins specifically requested prejudgment interest under only section 3287 until after the hearing on the motion to tax costs. The court indicated its tentative decision to award interest and asked for supplemental declarations concerning the time when Edison had knowledge of their claimed damages. *After* Edison had filed its notices of appeal from the judgment and the court's order awarding prejudgment interest, the Steins asked for the first time for prejudgment interest under section 3288. Nonetheless, the court's order clearly indicates that it was relying on section 3287 and not 3288. It broke the prejudgment interest into two distinct time periods, neither running from the Steins' alleged date of loss.

We reject the Steins' argument that the court should have granted prejudgment interest under section 3288. The Steins did not request interest under that section in a timely manner. Edison was entitled to have a jury determine prejudgment interest under section 3288 since it is an issue for the trier of fact. (*Bullis* v. *Security Pac. Nat. Bank, supra,* 21 Cal.3d 801, 815.) Edison did not waive that right by stipulating that the trial court could consider the matter of prejudgment interest when it considered costs. The record reveals that the parties never contemplated section 3288 at the time of the stipulation.

Did the court find the correct dates that Edison had notice of the amounts claimed? Edison did not dispute the amount of damages at any point in the litigation. It merely asked for proof of claims. Although lack of dispute is merely a factor to be considered (*Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 799 [142 Cal.Rptr. 1]), the court

could consider it. In *Credit Managers' Assn.* v. *Brubaker*, *supra*, 233 Cal.App.3d 1587, the reviewing court rejected an argument similar to Edison's that damages were not certain simply from the notice in the complaint and a demand letter for the exact amount requested in the complaint and awarded in the judgment. (*Id.*, at p. 1595.)

█ Where the amount of damages cannot be resolved except by account, verdict or judgment, interest prior to judgment is not allowable. (*Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 907 [197 Cal.Rptr. 348].) Here, as in *Credit Managers' Assn.*, *supra*, the amount claimed in the complaint was the amount awarded by the jury. Ascertainment of the amount did not require an accounting from conflicting evidence. (See *Chesapeake Industries*, *supra*.) The Steins provided documentation for costs of the structure, personal property and insured rents as alleged in the complaint and in their answers to interrogatories. They asserted the claimed losses for uninsured rents and labor at that time and substantiated them at trial.

Since there was no dispute in the amount claimed and no disparity in the amount claimed and the final judgment, the trial court did not err in allowing prejudgment interest from date of notice to Edison of the various losses.

We also reject Edison's claim that interest could not be awarded in a "piecemeal" fashion. *Bullis* v. *Security Pac. Nat. Bank*, *supra*, 21 Cal.3d 801, at page 815, specifically upheld an award of interest on each of several unauthorized withdrawals from a bank account of over a four-year period, from the date of each individual withdrawal. Although *Bullis* was discussing interest under section 3288, we see no reason why its reasoning would not apply to section 3287, subdivision (a).

We similarly reject the Steins' contention that *Bullis* and *Greater Westchester* allow prejudgment interest from date of loss under section 3287. Both *Bullis* and *Greater Westchester* discussed application of section 3288. Moreover, cases such as *Leff* v. *Gunter* (1983) 33 Cal.3d 508 [189 Cal.Rptr. 377, 658 P.2d 740] which have allowed prejudgment interest under 3287 from date of loss generally concern misappropriation of or wrongful withholding of funds where damages are readily ascertainable at the time plaintiff suffered the damage. Although the Steins suffered a loss on the date of the fire, the extent of the monetary loss and the amount of repair was not known on that date. Moreover, unlike the defendants in *Leff* v. *Gunter*, Edison did challenge the date on which damages vested.

The judgment and order appealed from are affirmed. Each party is to bear its own costs on appeal.

Gilbert, J., and Yegan, J., concurred.