A08A1952. SMITH et al. v. CHEMTURA CORPORATION et al.
(676 SE2d 756)

DOYLE, Judge.

Diana Smith and nine other individuals (collectively, "the plaintiffs") — some of whom also asserted claims on behalf of their minor children — filed suit against the City of Conyers ("the City"), Rockdale County, Georgia ("the County"), Chemtura Corporation f/k/a Great Lakes Chemical Company, BioLab, Inc., and John Does 1 to 6, asserting federal and state claims against the defendants based on injuries that the plaintiffs purportedly sustained following two toxic chemical fires that occurred in April and May 2004 at a BioLab

---

288

facility. Pursuant to OCGA § 9-11-12 (b) (6), Chemtura and BioLab (collectively, "Chemtura") moved to dismiss some of the claims brought by the plaintiffs.[1] Following a hearing, the trial court entered an order indicating that it was converting the motion to dismiss to a motion for summary judgment and dismissing with prejudice several of the plaintiffs' claims. The plaintiffs appeal, alleging that the trial court's order was erroneous. We disagree and affirm.

The plaintiffs allege that BioLab operates "a production and warehouse facility" in Conyers where dry chlorine pellets, calcium hypochlorite, and other chlorine-based chemicals are stored. The complaint alleges that there was a chemical fire at the BioLab facility on April 17, 2004, "which caused a toxic cloud of trichloroisocyanuric acid . . . which contaminated the surrounding areas." On May 25, 2004, a second chemical fire occurred at the facility, which, according to the complaint, "spew[ed] pollutants" into the residential area where the plaintiffs live. The plaintiffs allege that the fires were "caused by the improper mixing of two incompatible toxic chemicals" at the facility.

Chemtura moved to dismiss many of the claims brought by the plaintiffs, leaving other claims pending in the trial court that are not at issue on appeal.[2] Following a hearing,[3] the trial court entered an order — styled "Order on Defendants' Motion to Dismiss" — converting the motion to a motion for summary judgment. In the order, the trial court dismissed with prejudice the following claims: attractive nuisance; strict liability; RICO; the adult plaintiffs' personal injury claims (including intentional and negligent infliction of emotional distress, mental and emotional pain and suffering, failure to warn, and "breach of duty" negligence);[4] and civil claims based on criminal statutes (which included criminal negligence, reckless endangerment, assault and battery, false imprisonment, and kidnapping).

1. The plaintiffs argue that the trial court erred in converting

---

[1] After the motion to dismiss was filed, the defendants removed the case to the United States District Court for the Northern District of Georgia. The defendants filed a motion to dismiss the plaintiffs' federal claims, which included claims under 42 USC §§ 1981, 1983, 1985, and 1986 and Title VII of the Civil Rights Act of 1964, and claims that the defendants violated federal Occupational Safety and Health Administration rules and regulations. The federal court granted the motion and remanded the case to the Superior Court of Rockdale County for the resolution of the state law claims.

[2] Chemtura's motion to dismiss did not address the plaintiffs' claims for personal injury arising out of the May 2004 fire (including claims for intentional and negligent infliction of emotional distress, mental and emotional pain and suffering, failure to warn, and negligence), stubborn litigiousness, trespass, or punitive damages.

[3] The record does not contain a transcript of the motion hearing.

[4] Chemtura did not seek dismissal of the minor plaintiffs' personal injury claims.

Chemtura's motion to dismiss to a summary judgment motion without providing proper notice to the plaintiffs. This enumeration affords no basis for relief.

"If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."[5] "In such a case, the court must give the parties 'reasonable opportunity to present all material made pertinent' to a summary judgment motion. Specifically, the court must give the nonmoving party at least 30 days notice to prepare evidence in opposition to summary judgment."[6]

Here, Chemtura filed its motion to dismiss on November 19, 2007. The plaintiffs filed their response to the motion on January 22, 2008, requesting oral argument therein. In its March 28, 2008 order on the motion, the trial court indicated that the plaintiffs had requested " 'a full evidentiary hearing/oral argument.' " The court also stated in the order that it was treating the motion to dismiss as a motion for summary judgment, indicating that it had considered the filings of the parties and "the submissions of counsel for the parties" during a hearing held March 13, 2008.

The plaintiffs contend that they did not have notice that the trial court was treating the motion to dismiss as a summary judgment motion. Chemtura does not contest this assertion, and the record on appeal does not contain any indication that the trial court notified the plaintiffs of the conversion before it issued the order. "But deficient notice is not reversible absent a showing of harm. [The plaintiffs have] failed to show — or even to argue — that [they were] harmed by any deficiency in the court's notice."[7] Under these circumstances, because the parties were afforded a full evidentiary hearing, and the plaintiffs failed to demonstrate any harm resulting from the lack of notice, we find no reversible error in the trial court's conversion of Chemtura's motion.[8]

2. The plaintiffs allege that the trial court erred in concluding that they had failed to state a claim for attractive nuisance. We disagree.

In their complaint, the plaintiffs contend that "[t]he multi-colored toxic chemical fumes from the [May 25, 2004] [c]hemical [f]ire created an attractive nuisance for adults and children alike"

---

[5] OCGA § 9-11-12 (b).

[6] (Footnote omitted.) *Bynum v. Horizon Staffing*, 266 Ga. App. 337, 338 (1) (596 SE2d 648) (2004).

[7] (Footnote omitted.) Id. at 339 (1), citing *Christensen v. State*, 219 Ga. App. 10, 12 (4) (464 SE2d 14) (1995).

[8] See *Bynum*, 266 Ga. App. at 339 (1).

who were watching the fire "from their yards and/or porches." "The theory of attractive nuisance is that a possessor of land is subject to liability for physical harm to *children trespassing* thereon."[9] Thus, the attractive nuisance theory is unavailable to the adult plaintiffs.[10] And because the complaint alleges that the plaintiffs were harmed while on their own property — and there is no evidence that they were trespassing on the property of Chemtura — the attractive nuisance theory is unavailable to the plaintiffs.[11]

The plaintiffs argue, however, that the attractive nuisance doctrine does not require an allegation of trespass, relying on *Starland Dairies v. Evans.*[12] Their reliance on this case is misplaced. *Starland Dairies* involved a claim for injuries sustained by a two-year-old child who climbed aboard and then fell off of a horse-drawn milk wagon that the defendant left unattended with children, including the plaintiff, playing on and around it.[13] This Court held that although the theory of attractive nuisance did not apply because the child was not a trespasser, the plaintiff had asserted a viable claim under the principles of licensee liability.[14] Thus, *Starland Dairies* is inapposite and provides no basis for reversing the trial court's order.

3. The plaintiffs also allege that the trial court erred in ruling that their "product liability claims are . . . defective as a matter of law." We find no error.

As an initial matter, we note that in their complaint, the plaintiffs cite OCGA § 51-1-11.1 as the statutory basis for their strict liability claims. But that Code section does not create a cause of action for strict manufacturer liability; instead, it provides that a product seller is not a manufacturer under OCGA § 51-1-11 — the strict liability Code section — and is not liable as such. Therefore, the plaintiffs' reliance on this Code section presents no basis for their claim.

Notwithstanding their failure to plead the applicable Code section, the plaintiffs have not stated a claim for strict liability. Under OCGA § 51-1-11 (b) (1),

[t]he manufacturer of any personal property sold as new property directly or through a dealer or any other person

---

[9] (Punctuation omitted; emphasis in original.) *Biggs v. Brannon Square Assoc.*, 174 Ga. App. 13, 15 (1) (329 SE2d 239) (1985).

[10] See id.

[11] See id.

[12] 105 Ga. App. 813 (125 SE2d 682) (1962).

[13] See id. at 813 (1) (a).

[14] See id. at 815 (1) (b), (3).

> shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

Manufacturers are liable under this Code section for personal property "placed in the stream of commerce."[15]

Here, the complaint does not specifically state that Chemtura *manufactured* the products contained at the facility in Conyers. It does allege, however, that the facility is "a production and warehouse location for BioLab, Inc." where various products are warehoused. Clearly, if Chemtura did not manufacture the products at issue, it cannot be held liable under a strict liability theory.[16] And if it did manufacture the products, the plaintiffs' failure to allege — either generally or specifically — that the products stored at the facility had been "placed in the stream of commerce" or that Chemtura had "relinquished its exclusive control over the product" is fatal to their strict liability claims.[17] Accordingly, we find no error in the trial court's dismissal of the plaintiffs' strict liability claims.

4. The plaintiffs also argue that the trial court erred in ruling that they failed to "clearly state[ ] Georgia RICO claims." Again, we find no error.

Under OCGA § 16-14-4 (a), "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." "A 'pattern [of racketeering activity]' means engaging in at least two incidents of racketeering activity, which is defined as the commission of a crime in any of [40] specified categories of offenses [set forth in OCGA § 16-14-3 (9)]."[18]

In their complaint, the plaintiffs allege civil RICO claims under OCGA § 16-4-1 et seq., specifically alleging that Chemtura:

> a. applied for said permits and/or allowed said permits to be issued even after the first toxic blaze;

---

[15] See *Monroe v. Savannah Elec. &c. Co.*, 267 Ga. 26, 27 (2) (471 SE2d 854) (1996); *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745 (353 SE2d 340) (1987), aff'g *Thorpe v. Robert F. Bullock, Inc.*, 179 Ga. App. 867 (348 SE2d 55) (1986).

[16] See OCGA § 51-1-11.

[17] *Monroe*, 267 Ga. at 29 (3). See OCGA § 51-1-11.1 (b).

[18] (Punctuation omitted.) *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, 678 (2) (634 SE2d 802) (2006).

b. pushed to have or allowed said BioLab facility to be constructed and/or to be rebuilt or reopened;

c. allowed such chemicals to be stored at said BioLab facility without the proper safeguards; and, after the [first toxic chemical fire] at the BioLab [f]acility[,] allowed said chemicals to be stored outside the facility and/or shipped into Georgia knowing the toxic nature of the same and/or the propensity of the Defendants to mishandle and/or fail to monitor hazardous conditions at the BioLab facility; and

d. allowed said BioLab facility to remain open after [the first toxic chemical fire] knowing the imminent and on-going dangers to the members of the African-American and the Caucasian residential community surrounding the BioLab [f]acility.

None of these alleged acts appears as one of the forty specified predicate acts enumerated in the RICO statute.[19] In their brief in response to the motion to dismiss, the plaintiffs allege that the defendants' violations of the following penal statutes are the predicate acts for their RICO claim: criminal negligence, reckless endangerment, assault, battery, kidnapping, and false imprisonment. Of these six criminal acts, only kidnapping and false imprisonment appear as potential "racketeering activity" as defined in the RICO statute.[20]

Pretermitting whether the plaintiffs' failure to specifically plead kidnapping and false imprisonment as predicate offenses in their complaint is fatal to their RICO claims, they have nevertheless failed to allege a pattern of two or more predicate acts as required by the statute.[21] In their complaint, the plaintiffs' kidnapping and false imprisonment claims are based on allegations that they had to leave their homes after the May 2004 fire.[22] Thus, these alleged crimes arose from a single transaction — the May 2004 fire — which does not constitute a pattern of at least two predicate acts of racketeering.[23] It follows that the trial court did not err in dismissing the

---

[19] See OCGA § 16-14-3 (9).

[20] See OCGA § 16-14-3 (9) (A) (xxx).

[21] See OCGA § 16-14-3 (8) (A); *All Fleet Refinishing*, 280 Ga. App. at 679 (2).

[22] In the complaint, the plaintiffs allege that they "were never informed" of the April 2004 fire and, at the time of the May 2004 fire, were not aware that they had suffered purported injuries as a result of the previous fire. Thus, there was no allegation, implied or direct, that the plaintiffs were "forced" to leave their homes after the first fire.

[23] See *Security Life Ins. Co. of America v. Clark*, 273 Ga. 44, 48 (2), n. 22 (535 SE2d 234) (2000); *Waldschmidt v. Crosa*, 177 Ga. App. 707, 710 (2) (340 SE2d 664) (1986) (physical precedent only).

plaintiffs' civil RICO claims.

5. The plaintiffs argue that the trial court erred in dismissing the adult plaintiffs' personal injury claims arising from or relating to the April 2004 fire (specifically, intentional and negligent infliction of emotional distress, mental and emotional pain and suffering, failure to warn, and negligence) on the basis that such claims were barred by the applicable statute of limitation.

In Georgia, a two-year statute of limitation applies to actions for injuries to the person.[24] The plaintiffs filed their initial complaint on May 23, 2006, more than two years after the April 17, 2004 fire.[25] The trial court concluded, therefore, that the two-year statute of limitation barred the adult plaintiffs' personal injury claims arising from or relating to the April 17, 2004 fire.

The plaintiffs do not dispute that claims for personal injuries are subject to a two-year statute of limitation. Instead, they oppose Chemtura's motion on the grounds that the statute of limitation was tolled by the continuous tort doctrine and the subsequent injury doctrine. The plaintiffs bear the burden of persuasion "to present some evidence showing that an issue exists that the statute has not run but has been tolled."[26]

Pretermitting whether the continuous tort doctrine or the subsequent injury doctrine tolls the statute of limitation for the plaintiffs' claims, the plaintiffs have not pointed to any evidence they presented to the trial court to meet their burden of persuasion on this issue, and our review of the record does not show any such evidence.[27] "It is well established that the burden is on the party alleging error to show it by the record and that where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm."[28] Thus, the plaintiffs have failed to meet their burden of establishing that the statute of limitation was tolled, and we find no error in the trial court's ruling on this issue.[29]

---

[24] See OCGA § 9-3-33 ("[a]ctions for injuries to the person shall be brought within two years after the right of action accrues").

[25] The plaintiffs dismissed the first complaint and filed the instant "renewal complaint" on July 23, 2007.

[26] *Miller v. Kitchens*, 251 Ga. App. 225, 227 (a) (553 SE2d 300) (2001).

[27] In their notice of appeal, the plaintiffs directed the clerk of the trial court to include only certain documents, presumably omitting others. The record does not contain a transcript of the hearing before the trial court.

[28] (Punctuation omitted.) *Tanks v. The Greens Owners Assn.*, 281 Ga. App. 277 (635 SE2d 872) (2006).

[29] See *Kane v. Shoup*, 260 Ga. App. 723, 726 (2) (580 SE2d 555) (2003) (affirming trial court's ruling that the plaintiffs' claims were time-barred because the plaintiffs produced no evidence that would toll the applicable statute of limitation); *Miller*, 251 Ga. App. at 227 (a) (affirming grant of summary judgment to defendant because the plaintiff failed to present

294

In a supplemental brief, the plaintiffs argue for the first time that the statute of limitation was tolled based on OCGA § 9-3-99.[30] But "[a]ttempts in a supplemental brief to expand the issues beyond the scope of the enumeration of errors are improper."[31] And, again, the plaintiffs have not met their burden of production of establishing that the statute of limitation was tolled, as they have presented no evidence to support such a theory.[32] More importantly, the plaintiffs have failed to show that they raised this argument regarding OCGA § 9-3-99 in the trial court, and thus, they have waived it.[33] Finally, the plaintiffs do not cite to the portion of the record in support of this argument; "therefore, it is deemed abandoned."[34]

6. The plaintiffs further argue that the trial court erred in determining that their claims based on criminal statutes fail as a matter of law. In their complaint, the plaintiffs alleged causes of action based on Chemtura's purported violations of the following penal statutes, specifically citing the criminal Code sections: criminal negligence (OCGA § 16-2-1 (b)); reckless endangerment (OCGA § 16-5-60 (b)); assault (OCGA § 16-5-20 (a)); battery (OCGA §§ 16-5-23 and 16-5-23.1 (a)); false imprisonment (OCGA § 16-5-41); and kidnapping (OCGA § 16-5-40). In its order dismissing such claims, the trial court determined that the plaintiffs failed to demonstrate any "indication that the legislature intended to impose civil liability in addition to the criminal sanctions set forth in the statutes where . . . nothing in the provisions of the statute creates a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute," relying on *Murphy v. Bajjani*[35]

---

evidence to raise an issue of material fact that fraud tolled the running of the applicable statute of limitation).

[30] OCGA § 9-3-99 provides that "[t]he running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years."

[31] *Holloway v. State*, 245 Ga. App. 510, 515 (4) (537 SE2d 708) (2000).

[32] See *Miller*, 251 Ga. App. at 227 (a).

[33] See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.' Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. If the rule were otherwise, a party opposing a motion for summary judgment need not raise any legal issue, spend the next year thinking up and researching additional issues for the appellate court to address, and require the opposing party to address those issues within the narrow time frame of appellate practice rules.") (citations and punctuation omitted); *Miller*, 251 Ga. App. at 229 (d).

[34] *Miller*, 251 Ga. App. at 229 (d).

[35] 282 Ga. 197, 201 (2) (647 SE2d 54) (2007).

and *Verdi v. Wilkinson County.*[36]

It is well settled that "[t]he violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who claims to have been injured thereby."[37] Nevertheless, "[c]ivil liability may be authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute."[38]

Here, the trial court properly concluded that nothing within the provisions of the criminal statutes specified by the plaintiffs provides a basis for a civil action by an alleged victim.[39] Instead, the civil liability of Chemtura "must be determined under the applicable provisions of the tort laws of this state, not the inapplicable criminal provisions. . . ."[40] However, the plaintiffs have failed to specify on appeal any civil torts that arguably may have been raised in those counts of their complaint alleging violations of penal statutes. For example, the plaintiffs do not argue on appeal that they have asserted a civil claim for battery, and they have not shown where in the complaint they alleged the specific elements for such a claim. And we decline to cull the 49-page, 225-paragraph complaint to determine whether the plaintiffs have asserted any civil claims that they failed to name in their complaint or to specify or argue on appeal. Thus, this enumeration presents no basis for reversal.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 17, 2009 —
RECONSIDERATION DENIED APRIL 3, 2009.

*Ralph J. Villani*, for appellants.
*Troutman Sanders, John J. Dalton, Kevin A. Maxim, Merle R. Arnold III*, for appellees.

---

[36] 288 Ga. App. 856, 858 (655 SE2d 642) (2007).

[37] (Punctuation omitted.) *Rolleston v. Huie*, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990).

[38] (Punctuation omitted.) *Murphy*, 282 Ga. at 201 (2).

[39] See id.; *Verdi*, 288 Ga. App. at 858.

[40] *Rolleston*, 198 Ga. App. at 50 (2).