**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 25, 2021**

# In the Court of Appeals of Georgia

A21A1010. RIMERT v. MERIWETHER & THARP, LLC et al.

A21A1011. MERIWETHER & THARP, LLC et al. v. RIMERT.

A21A1012. MERIWETHER & THARP, LLC et al. v. VALADE.

REESE, Judge.

This invasion of privacy and legal malpractice lawsuit arose from the divorce and child custody litigation between Jennifer Valade and Kenneth Valade. Kenneth Valade, allegedly at the advice of his attorneys — Elizabeth Doak, Patrick Meriwether, and Meriwether & Tharp, LLC (collectively, the "Attorneys") — secretly recorded Jennifer Valade and Crystal Rimert in a bedroom and subsequently distributed those recordings. The trial court, in a partial summary judgment order: (1) granted summary judgment in favor of the Attorneys on Rimert's claims of negligent training and supervision of Doak; (2) granted summary judgment in favor of the Attorneys on Rimert's claim of liability per se for a violation of Georgia's criminal

wiretapping statute, OCGA § 16-11-62 (2); (3) denied the Attorneys' summary judgment motion on Kenneth Valade's claims of legal malpractice; and (4) denied the Attorneys' summary judgment motion with respect to Rimert's invasion of privacy claims against the Attorneys. This appeal by Rimert and the Attorneys followed. For the reasons set forth infra, we affirm in Case No. A21A1010, affirm in part and reverse in part in Case No. A21A1011, and reverse in Case No. A21A1012.

Viewed in the light most favorable to the respective nonmoving parties below,[1] the record shows the following. Jennifer Valade filed for divorce against Kenneth Valade in July 2013. Kenneth Valade hired the Attorneys to represent him in the divorce. Doak graduated law school in 2010 and had been working at Meriwether & Tharp the prior three years since passing the Georgia Bar. According to Kenneth Valade, during an initial meeting with the Attorneys, Meriwether advised him to place a "nanny cam" in Jennifer Valade's bedroom, and that it was legal to do so and directly related to the issues in the divorce. Doak agreed with this advice. At the time, the court had a standing order in divorce actions that prohibited a party from "placing under surveillance . . . for the purpose of harassing and intimidating the other party[.]"

---

[1] See *Griffin v. State Bank*, 312 Ga. App. 87 (718 SE2d 35) (2011).

Kenneth Valade proceeded to install in Jennifer Valade's bedroom a covert surveillance camera that he had received from a private investigator. At the time, the Valades were not living together, with Jennifer Valade occupying the marital home on the weekdays, and Kenneth Valade occupying the home on the weekends. The camera was motion-activated and video was recorded to an SD card. Among other recordings, the camera captured Jennifer Valade and Rimert in bed together having sexual relations.

Kenneth Valade showed the recordings to Doak and the private investigator. Meriwether sent a letter to Jennifer Valade's counsel on August 2, 2013, stating that Kenneth Valade had recently become aware that Jennifer Valade was having sex with Rimert in the marital home. The letter demanded that "[t]his behavior must stop *immediately*." (Emphasis in original). Otherwise, Kenneth Valade would seek an emergency hearing, which would "force him to present all evidence of Ms. Valade's adulterous, lesbian relationship thereby making it public record." The Attorneys subsequently filed a motion with the trial court seeking an emergency hearing. The motion revealed that Kenneth Valade had placed a camera in the home, which had recorded Jennifer Valade and Rimert engaging in sexual relations.

3

The court decided to consider the Attorneys' motion on the regular motions calendar, but held an emergency hearing on August 15, 2013, after Jennifer Valade made allegations of domestic violence against Kenneth Valade. Doak represented Kenneth Valade at the hearing. Jennifer Valade alleged that Kenneth Valade had pinned her against a wall and shoved her down the basement steps. She took pictures of the bruises, reported the incident to the police, and showed the bruises to a deputy. She also alleged at the hearing that Kenneth Valade had shaken, pushed, and thrown objects at their daughter. Kenneth Valade denied hurting his wife and child, but stated that he had, at the advice of counsel, placed a camera in the bedroom. The court granted Jennifer Valade's request for a family violence protective order.

A day after the hearing, the State issued a warrant for Kenneth Valade's arrest for aggravated stalking and unlawful surveillance. The State later indicted him for burglary, aggravated stalking, invasion of privacy, and family violence battery. The first three charges were based on him placing a camera in the bedroom. The State ultimately nolle prossed all the charges.

Rimert filed a complaint against Kenneth Valade, the Attorneys, and others alleging claims against the Attorneys of, among other things: violations of her right to privacy under OCGA § 16-11-62 (2), (6), and (7); negligent training and

supervision by Meriwether & Tharp over its employee Doak; and violations of Rimert's common law right to privacy. Kenneth Valade filed a cross-claim against the Attorneys for professional negligence and malpractice. The Attorneys filed a motion for summary judgment on Rimert's and Kenneth Valade's claims, which the trial court granted in part and denied in part. These appeals by Rimert and the Attorneys followed.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

With these guiding principles in mind, we now turn to the parties' claims of error.

*Case No. A21A1010*

1. Rimert argues that the trial court erred in granting the Attorneys' summary judgment motion regarding her claims of negligent supervision and training of Doak. The trial court below found that Rimert cited to no evidence that Doak was somehow

---

[2] *Griffin*, 312 Ga. App. at 87 (citations and punctuation omitted).

unsuited to represent Kenneth Valade or that Meriwether & Tharp was aware of some inability.

"An employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."[3] Here, Rimert primarily cites to Doak's relative inexperience in the legal issues presented in this case. However, we agree with the trial court that the record was devoid of evidence that Meriwether & Tharp disregarded indications that Doak was somehow unsuited for representation. Accordingly, the trial court did not err in granting summary judgment on this claim.[4]

2. Rimert argues that the trial court erred in granting the Attorneys' summary judgment motion regarding her claims that the defendants violated OCGA § 16-11-62 (2) and were thus per se liable. She contends that the factfinder should determine whether the purpose of the recordings fell under the crime-detection exception to the statute, or whether the recordings were made for some other impermissible purpose.

---

[3] *Leo v. Waffle House*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009).

[4] See *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 866 (2) (596 SE2d 604) (2004); *Leo*, 298 Ga. App. at 841 (2).

At the time of the surveillance in 2013, OCGA § 16-11-62, a criminal statute, provided:

It shall be unlawful for:

. . .

(2) Any person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view; provided, however, that it shall not be unlawful:

. . .

(C) To use for security purposes, crime prevention, or crime detection any device to observe, photograph, or record the activities of persons who are within the curtilage of the residence of the person using such device. A photograph, videotape, or record made in accordance with this subparagraph, or a copy thereof, may be disclosed by such resident to the district attorney or a law enforcement officer and shall be admissible in a judicial proceeding, without the consent of any person observed, photographed, or recorded[.]

In *Rutter v. Rutter* ("*Rutter I*"), issued about one year before the Attorneys' advice to Kenneth Valade, we held that the trial court in a divorce action properly denied a motion to exclude a surreptitious recording of an opposing spouse in the marital home.[5] In that case, OCGA § 16-11-62 (2) did not bar admission of the

---

[5] See *Rutter v. Rutter*, 316 Ga. App. 894, 902 (2) (c) (730 SE2d 626) (2012), overruled by *Rutter v. Rutter*, 294 Ga. 1 (749 SE2d 657) (2013).

recording because the wife set up the recording for the purpose of crime detection, in order to document harm the husband might visit upon the children.[6] Subsection (C) to OCGA § 16-11-62 (2) applied even though the wife's primary objective was to obtain custody in the divorce proceeding.[7] The Attorneys explicitly relied upon *Rutter I* and OCGA § 16-11-62 (2) (C) in their pleadings in the Valade divorce action. The Attorneys claimed that Kenneth Valade was "concerned" with the crime of adultery, which is a misdemeanor under OCGA § 16-6-19.[8]

In October 2013, about two months after Kenneth Valade made the recordings, the Supreme Court of Georgia reversed our decision in *Rutter I* ("*Rutter II*").[9] The Court held that subparagraph (C) of OCGA § 16-11-62 (2), which was enacted by a House bill in 2000, did not survive the enactment of a Senate bill a week later

---

[6] *Rutter*, 316 Ga. App. at 902 (2) (c).

[7] Id. at 901 (2) (c).

[8] The parties did not argue below whether reliance on the crime of adultery was proper, given the offense's questionable constitutional status. See *In re J. M.*, 276 Ga. 88, 90-91 (3) (575 SE2d 441) (2003) (fornication statute was unconstitutional to the extent it criminalized "the private, non-commercial, consensual sexual acts of two persons legally capable of consent[]"). Because the parties did not address this issue below or on appeal, we do not address it here.

[9] *Rutter*, 294 Ga. at 3.

because the Senate bill did not contain the subparagraph.[10] Accordingly, given the Supreme Court's holding in *Rutter II*, OCGA § 16-11-62 (2) did not contain properly enacted exceptions. The General Assembly corrected this oversight in 2015.[11]

Rimert concedes that *Rutter II* should not be applied retroactively against the Attorneys.[12] She instead argues that the trial court should not have dismissed her entire claim under OCGA § 16-11-62 (2), but should have instead allowed the factfinder to determine whether the Attorneys' conduct satisfied the crime-detection exception under subparagraph (C).

Here, the evidence was undisputed that Kenneth Valade and the Attorneys set out to record Rimert and Jennifer Valade commit the crime[13] of adultery within the curtilage of Kenneth Valade's home. Although Rimert cites to varying other reasons given by the Attorneys and Kenneth Valade for the recording, crime detection need

---

[10] Id. at 2-3.

[11] See Ga. L. 2015, p. 1046, § 2.

[12] See *Morris v. Turnkey Med. Eng.*, 317 Ga. App. 295, 299 (729 SE2d 665) (2012) (listing factors a court should consider in deciding to apply a case retroactively or prospectively).

[13] Again, we do not comment on whether reliance on the crime of adultery in order to satisfy OCGA § 16-11-62 (2) (C) was proper.

not be the sole intent of a party in order to satisfy OCGA § 16-11-62 (2) (C).[14] Thus, the trial court did not err in granting summary judgment on this issue. We note that, as explained in Division 3 below, this holding does not prevent Rimert from proceeding on her claims of common law invasion of privacy.

*Case No. A21A1011*[15]

3. The Attorneys argue that they can not be held liable under theories of common law invasion of privacy because their behavior was permitted by OCGA § 16-11-62 (2) (C).

"More than 100 years ago, our Supreme Court recognized a private right of action for an invasion of privacy. Since then, the Supreme Court and this Court have identified four kinds of invasion of privacy for which a right of action exists, and among these is an intrusion upon the seclusion or solitude of a plaintiff or into his

---

[14] See *Rutter I*, 316 Ga. App. at 902 (2) (c); see also *Fleet Finance v. Jones*, 263 Ga. 228, 231 (3) (430 SE2d 352) (1993) (criminal statutes must be strictly construed against criminal liability even in the civil context).

[15] The Attorneys briefed their claims of error regarding Kenneth Valade's legal malpractice claims in both Case Nos. A21A1011 and A21A1012. The Attorneys' briefs regarding these issues are identical. We will address the legal malpractice issues in Divisions 6 and 7 below.

private affairs."[16] "With regard to this type of invasion of privacy, the Supreme Court has held that the unreasonable intrusion aspect involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns."[17] This can include surveillance on the plaintiff by the defendant.[18]

"The civil liability of [the defendant] must be determined under the applicable provisions of the tort laws of this state, not the inapplicable criminal provisions[.]"[19] Here, the Attorneys' potential criminal liability under OCGA § 16-11-62 (2) is irrelevant to their civil liability under common law invasion of privacy.[20] Accordingly, the trial court did not err in denying summary judgment on this claim.

---

[16] *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 135 (1) (a) (709 SE2d 314) (2011) (citations omitted). "The other recognized invasions of privacy for which a right of action exists are the public disclosure of embarrassing private facts, publicity that puts one in a false light, and the appropriation of one's name or likeness for the advantage of another." Id. at 136 (1) (a) n. 3.

[17] *Assn. Svcs. v. Smith*, 249 Ga. App. 629, 632 (2) (549 SE2d 454) (2001) (citations and punctuation omitted).

[18] See *Benedict*, 309 Ga. App. at 136 (1) (a); *Johnson v. Allen*, 272 Ga. App. 861, 864-865 (1) (613 SE2d 657) (2005).

[19] *Smith v. Chemtura Corp.*, 297 Ga. App. 287, 295 (6) (676 SE2d 756) (2009) (punctuation and footnote omitted).

[20] See id. at 294-295 (6) (given the plaintiffs' complaint and arguments on appeal, their claims for criminal offenses such as criminal battery did not state a claim for civil battery).

4. The Attorneys argue that they cannot be held liable under OCGA § 16-11-62 (6) for distribution of the recording to counsel for Jennifer Valade and counsel for Kenneth Valade because liability would violate the Attorneys' discovery duties.

OCGA § 16-11-62 also provides that it is unlawful for:

(6) Any person to sell, give, or distribute, without legal authority, to any person or entity any photograph, videotape, or record, or copies thereof, of the activities of another which occur in any private place and out of public view without the consent of all persons observed; or
(7) Any person to commit any other acts of a nature similar to those set out in paragraphs (1) through (6) of this Code section which invade the privacy of another.

The phrase "without legal authority" as used in OCGA § 16-11-62 (6) is not defined by statute.[21] We are convinced, however, that a party disclosing a recording for discovery purposes does not violate this subsection.[22] Indeed, the Georgia Supreme Court has held that a prosecutor does not violate a similar criminal statute prohibiting distribution of sexually explicit conduct of a minor when the prosecutor

___

[21] See OCGA § 16-11-60 (definitions).

[22] See *Intl. Harvester Co. v. Cunningham*, 245 Ga. App. 736, 738 (1) (538 SE2d 82) (2000) ("Discovery is an integral and necessary element of our civil practice. Wide latitude is given to make complete discovery possible.") (citation and punctuation omitted).

12

produces the recording in response to a discovery request or court order.[23]

Accordingly, we reverse the trial court's denial of the Attorneys' motion for summary judgment with respect to Rimert's claims that the Attorneys violated OCGA § 16-11-62 (6).[24]

5. The Attorneys also contend that they cannot be held liable under the catchall provision of OCGA § 16-11-62 (7).

The Attorneys only briefly argued below that they did not violate the catchall provision because their conduct was explicitly authorized by OCGA § 16-11-62 (2). The trial court found that the Attorneys' summary judgment motion did not reach Rimert's claim under OCGA § 16-11-62 (7) "except to the extent that subsection (7) is co-extensive with subsection (2)." Because the Attorneys did not present any additional arguments before the trial court regarding this subsection, and because the court's decision agrees that any claim under OCGA § 16-11-62 (7) cannot implicate

---

[23] See *Alexander Properties Group v. Doe*, 280 Ga. 306, 308-309 (626 SE2d 497) (2006).

[24] Although Rimert argues that the Attorneys did not present these arguments before the trial court, the Attorneys raised these arguments in their reply brief below and during the summary judgment hearing.

13

the exceptions to OCGA § 16-11-62 (2), we affirm the trial court's decision on this issue.[25]

*Case No. A21A1012*[26]

6. The Attorneys argue that judgmental immunity barred Kenneth Valade's malpractice claim against them because the surveillance and subsequent letter to Jennifer Valade's attorney was permissible. The trial court found that, putting aside any potential violation of OCGA § 16-11-62, a question of fact existed whether the Attorneys' conduct violated the divorce court's standing order preventing surveillance for the purposes of harassment and intimidation, and that such conduct led to Kenneth Valade's arrest for aggravated stalking.

> Under the Georgia doctrine of judgmental immunity, there can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the

---

[25] See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) (Appellate courts "refuse[] to review issues not raised in the trial court. . . . Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.").

[26] Kenneth Valade did not submit a response brief in any of the three cases.

advantage of hindsight. If this were permitted, the original trial would become a "play within a play" at the malpractice trial.[27]

As the legal profession is at best an inexact science, a breach of duty arises only when the relevant, i.e., legal principles or procedures *are well settled and their application clearly demanded, and the failure to apply them apparent.* Unless the law is so well settled, clear, and widely recognized, an attorney acting in good faith and to the best of his knowledge will be insulated from liability for adverse results.[28]

In his response to the Attorneys' motion for summary judgment below, Kenneth Valade argued that the Attorneys' malpractice caused him to violate the divorce court's standing order, which directly led to his arrest.

"A person commits the offense of aggravated stalking when such person, in violation of a . . . temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, [or] preliminary injunction . . . places under surveillance . . . without the consent of the other person for the purpose of harassing and intimidating the other person."[29]

---

[27] *Engelman v. Kessler*, 340 Ga. App. 239, 244 (1) (797 SE2d 160) (2017) (citation and punctuation omitted).

[28] *Jones v. American Envirecycle*, 217 Ga. App. 80, 83-84 (2) (456 SE2d 264) (1995) (citation and punctuation omitted; emphasis in original).

[29] OCGA § 16-5-91 (a).

15

A court in a divorce action may issue a standing order which "[e]njoins and restrains each party from doing or attempting to do or threatening to do any act which injures, maltreats, vilifies, molests, or harasses" the other party.[30]

We could not locate, nor did the trial court or Kenneth Valade cite, any case in which an aggravated stalking conviction was based on the violation of a divorce court's standing order. Indeed, it was only after the divorce court below granted a temporary protective order that the court warned that violation of the order could result in an arrest for aggravated stalking. Accordingly, the law on whether Kenneth Valade could be arrested for aggravated stalking based on the divorce court's standing order was not well settled, clear, and widely recognized.[31] We thus reverse the trial court's denial of the Attorneys' motion for summary judgment on this issue. Because the parties and the trial court did not address Kenneth Valade's remaining legal malpractice claims, we express no opinion as to the viability of his legal malpractice claims premised on civil liability resulting from Rimert's contentions of common law invasion of privacy.

---

[30] OCGA § 19-1-1 (b) (3).

[31] See *Chatham Orthopaedic Surgery Center v. White*, 283 Ga. App. 10, 12 (1) (640 SE2d 633) (2006); *Jones*, 217 Ga. App. at 84 (2).

7. Given our decision in Division 6 above, we need not address the Attorneys' remaining claims of error.

In summary, we affirm the trial court's decisions regarding negligent supervision, OCGA § 16-11-62 (2), common law invasion of privacy, and OCGA § 16-11-62 (7). We reverse the trial court's decisions regarding OCGA § 16-11-62 (6) and legal malpractice with respect to Kenneth Valade's arrest.

*Judgment affirmed in Case No. A21A1010. Judgment affirmed in part and reversed in part in Case No. A21A1011. Judgment reversed in Case No. A21A1012. Doyle, P. J., and Brown, J., concur.*

17